UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WESLEYANN & WARREN GILL, Parents and Next Friends of W.G., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 09-1608 (RMC) |
| DISTRICT OF COLUMBIA, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

Wesleyann and Warren Gill are ardent advocates for their son, W.G., who qualifies for and is receiving special education and related services as a child with a disability. A Hearing Officer found that the District of Columbia denied W.G. a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Improvement Education Act ("IDEIA"), 20 U.S.C. § 1400 *et seq.*, because at least one of his teachers was not a certified special education teacher as his individualized education plan ("IEP") requires and he had been placed in inappropriate classes. As a result, the Gills demanded 150 hours of compensatory education for their son. The Hearing Officer concluded that the Gills produced insufficient evidence to sustain a compensatory education award for W.G. under the standards established by *Reid v. District of Columbia*, 401 F.3d 516, 523–24 (D.C. Cir. 2005). The Gills appeal this determination. The Court will deny the parties' cross-motions for summary judgment and invite the Gills to seek an evidentiary hearing. While compensatory education is a customary award for denial of a FAPE, it is not automatic, and the Gills' counsel did not establish a basis on which 150 hours might be awarded to W.G.

# I. LEGAL STANDARD

## A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary

judgment. *Id*. at 325. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id*. at 675–76. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

### B. Individuals with Disabilities Education Improvement Act

The Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400 *et seq*., ensures that "all children with disabilities have available to them a free appropriate pubic education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEIA guarantees children with disabilities the right to a free appropriate public education ("FAPE"). *Id*. After a child is identified as having a disability, a team, which includes the child's parents, certain teachers, school officials, and other professionals, collaborates to develop an individualized educational program ("IEP") to meet the child's unique needs. *See* 20 U.S.C. §§ 1412(a)(4), 1414(d)(1)(B). Local school officials utilize the IEP to assess the student's needs and assign a commensurate learning environment. *See* 20 U.S.C. § 1414(d)(1)(A). The IEP team examines the student's educational history, progress, recent evaluations, and parental concerns prior to implementing a FAPE for the student. *Id* § 1414(d)(1)–(3). At a minimum, the IEP and the corresponding FAPE must "provide[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982). To determine whether a FAPE has been provided, courts must determine whether: (1) the school complied with the IDEIA's procedures; and (2) the IEP developed through those

procedures was reasonably calculated to enable the student to receive educational benefits. *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1312 (11th Cir. 2003).

While the District of Columbia is required to provide students with a public education, it does not guarantee any particular outcome or any particular level of education. *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982); *Dorros v. District of Columbia*, 510 F. Supp. 2d 97, 100 (D.D.C. 2007). If a parent objects to the identification, evaluation, or educational placement of the student, or the provision of a free appropriate public education, 20 U.S.C. § 1415(b)(6), the parent may seek an impartial due process hearing. *Id*. § 1415(f)(1). If the parent is dissatisfied with the outcome of that hearing, the parent may appeal the decision to a state court or a federal district court. *See* 20 U.S.C. § 1415(i)(2)(A).

A reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *See* 20 U.S.C. § 1415(i)(2)(C). A "party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). Courts sitting on an IDEIA appeal do not have unfettered review but "must . . . give 'due weight' to the administrative proceedings and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (citing *Kerkam*, 862 F.2d at 887). A court fashioning appropriate relief for a denial of FAPE, among other options, "may order compensatory education, *i.e.*, replacement of educational services the child should have received in the first place." *Reid*, 401 F.3d at 518.

## II. FACTS

W.G. attended the SunRise Academy in Washington, D.C. during the 2007-2008 school year. As early as a multi-disciplinary team meeting on May 21, 2008, W.G.'s parents, through their advocate, explained that they were interested in a change in placement because, among other things, W.G. felt he was being made fun of at SunRise. Administrative Record [Dkt. # 13] ("A.R.") at 77–78. The May 2008 meeting focused partly on W.G.'s truancy from school. *Id.* at 76–78. Some members of the team disagreed with a change in placement, believing that W.G.'s truancy at SunRise needed to be corrected before any change in placement could be considered. *Id.* at 78. The parents filed a due process complaint on June 16, 2008, alleging, *inter alia*, that D.C. failed to provide W.G. with an appropriate placement. *Id.* at 85. A Hearing Officer determined on July 14, 2008, that given the extent of W.G.'s truancy — and a lack of analysis of its genesis — it was impossible to determine if SunRise were an inappropriate placement, and left the issue to be reevaluated at a later time. *Id.* at 87–88. The Hearing Officer also ordered further evaluations of W.G. *Id.*

After more testing, a multi-disciplinary team meeting on November 5, 2008, led to a re-classification of W.G. from Learning Disabled ("LD") to Mental Retardation ("MR") and Emotionally Disturbed ("ED"). *Id.* at 40, 57; *see also* A.R., Tr. of 5/15/09 Hr'g [Ex. 8, 9] ("Tr. 5/15/09") at 46–7. The team determined W.G. has an IQ of 51. A.R. at 56. His education advocate sought a transfer from SunRise and compensatory education but D.C. refused, at least partly because of W.G.'s poor attendance. Tr. 5/15/09 at 47, 87–88. The parties acknowledge that at that November 2008 meeting, SunRise "did give a good presentation . . . [a]nd in good faith, the parent and W.[G.] and his advocate agreed to give SunRise a chance." *Id.* at 10.

At a multi-disciplinary team meeting on March 4, 2009, W.G.'s advocate again argued that SunRise was an inappropriate placement for W.G. and requested, *inter alia*, compensatory education for the time W.G. was placed at SunRise. A.R. at 272; Tr. 5/15/09 at 57, 90–91. D.C. rejected the request, asserting that SunRise was an appropriate placement and that W.G. had not missed any services. Tr. 5/15/09 at 57, 90–91. However, D.C. did re-consider the transfer request, and W.G. was transferred to the Leary School in Prince George's County on approximately March 11, 2009. A.R. 140, 144; Tr. 5/15/09 at 11.

W.G.'s parents filed a due-process complaint on March 27, 2009, arguing that SunRise had been an inappropriate placement for W.G., as it could not implement his IEP. A.R. at 2. Hearings were conducted on May 15 and 22, 2009. A.R. at 1. W.G. was 18 years old at the time of the hearing in 2009. Tr. 5/15/09 at 8. It is the Hearing Officer Determination ("HOD") on this complaint, rendered on May 26, 2009, that is currently before the Court. The Hearing Officer determined that although W.G. was denied a FAPE at SunRise, the Hearing Officer was unable to award compensatory education or fashion any other relief due to Plaintiffs' failure to propose "fact-specific relief" to compensate W.G. for the educational benefits of which he had been deprived. A.R. at 4–5. Plaintiffs assert that the Hearing Officer erred in awarding no hours of compensatory education to W.G. They seek an order reversing the HOD and an award of 150 hours of compensatory education for W.G.'s missed services. Compl. [Dkt. # 1], First Prayer for Relief.

### III. ANALYSIS

Plaintiffs seek reversal of a May 25, 2009 HOD which found that the student, W.G., had been denied a FAPE, yet denied W.G.'s specific request for 150 hours of compensatory education because Plaintiffs failed to present fact-specific evidence to justify the award requested.

The Hearing Officer detailed the problems with W.G.'s education between November 5, 2008 and approximately March 11, 2009:[1] (1) his teachers were not certified to teach special education, as required by his IEP, A.R. at 4; W.G. could not read yet was receiving As and Bs in school, *id.* at 5; W.G., according to his IEP, needed to be "taught to recognize letters accurately, to cross the street on signal, and count the number of bills he has up to $10," yet "sat in an Algebra and Chemistry class for half a year," *id.*; and W.G. was observed in a grammar class but the Hearing Officer noted that it was "unlikely" he could benefit from it. *Id.* "Petitioner, therefore, has demonstrated that Respondent failed to implement his IEP and denied him educational benefit[s]." *Id.* Thus, the Hearing Officer noted that the parents met their burden of showing that W.G. "was denied a FAPE." *Id.* at 4. Given the record before the Court, and the reasons set forth by the Hearing Officer, the Court finds no reason to upset the HOD that W.G. was denied a FAPE.

The remaining question here is what remedy, if any, would reasonably compensate W.G. for the denial of a FAPE. The Hearing Officer concluded that Plaintiffs produced insufficient

---

[1] Counsel for Plaintiffs expressly limited W.G.'s claim to compensatory education for the failure to provide FAPE between November 5, 2008, when W.G. was re-classified as MR and ED, and approximately March 11, 2009, around the time that W.G. was transferred from SunRise Academy. Although Plaintiffs' counsel, in his statement to the Hearing Officer, referred to November 25, 2008, as the starting date from which compensatory education benefits should accrue, it is clear from his opening statement as a whole that counsel believed the compensatory education should run from the meeting where W.G. was reclassified. *See* Tr. 5/15/09 at 11 (noting that "because the clinical [test] wasn't reviewed until November 25th, I don't feel comfortable going back to the beginning of the school year"), 12 ("What we are interested in is you making – considering whether the placement at Sunrise [sic] was appropriate beginning November 25th. And if not, if it was not appropriate, then we are going to request the award of compensatory education from November 25th to about March 11th."); accord 9 ("But the most important, I think, right now, is the clinical psychological, because on November 25th the team at Sunrise [sic], which included a DCPS representative, met and revised W[.G.'s] IEP and classified him as MR."); *see also* Tr. 5/15/09 at 73 (Ms. Ortega testifying that the compensatory education award should be for the period between November 5, 2008 to March 11, 2009). The date of the meeting where W.G. was re-classified as MR and ED was November 5, 2008. *See* A.R. at 40, 57; Tr. 5/15/09 at 46–7.

evidence from which he could award compensatory education. A.R. at 5. As detailed below, the Court agrees with the Hearing Officer that insufficient facts were presented to justify the award of compensatory education sought by the Plaintiffs. However, whether to award compensatory education is a question for the Court's equity jurisdiction, and is not a matter of legal damages. *Reid*, 401 F.3d at 523–24 (finding that compensatory education is not a form of damages because the courts act in equity when remedying IDEIA violations and must "'do equity and . . . mould each decree to the necessities of the particular case'") (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Therefore, the issue remains whether it is equitable to deny W.G. all compensatory education for D.C.'s failure to provide him with a FAPE between November 5, 2008 and March 11, 2009, due to the inadequate presentation of evidence on this issue at his due process hearing by his parents' counsel.

The problem is that despite the lengthy testimony on the denial of FAPE, the Plaintiffs' witness recommended "150 hours of life-skills training but offered no explanation why that amount was appropriate . . . [and] no method to adjust for [truancy] for which Petitioner was responsible." A.R. at 5. The Hearing Officer ultimately concluded that:

> Petitioner's requested life-skills training makes sense in light of the fact that he more likely than not received no benefit from Algebra and Chemistry. But Petitioner offered no specific program that indicated what he would be taught, who would teach it, and how long he would need to be in the program.

*Id.* Ms. Consuelo Ortega testified on behalf of W.G. as both his education advocate and as a fact witness, but not as an expert. *See* Tr. 5/15/09 at 5, 43. In the hearing, Ms. Ortega was asked point-blank, "How did you come up with 150 hours [for compensatory education]?" and she responded, in whole: "When I reviewed his IEP, I talked to the parent. I met W.[G.]. According with my

experience in – I think that this time [in] school [will] help us to provide the goals that he didn't complete when he was at Sunrise [sic]." *Id.* at 73 (errors in original). Counsel for Plaintiffs informed the Hearing Officer that "[w]e've actually identified some potential tutors who could provide [tutoring in life skills] over the summer." *Id.* at 12. Unfortunately, no information about tutors or courses was introduced. In the end, Ms. Ortega did not mention, and counsel did not otherwise elicit testimony or provide evidence concerning, potential tutors or life skills training that W.G. might have taken in the summer of 2009.

In *Reid v. District of Columbia*, the D.C. Circuit clarified that courts should not take a "cookie-cutter approach" to framing a compensatory education remedy as it runs counter to the court's broad discretion and the "substantive FAPE standard that provision [allowing a court to craft an appropriate remedy] is meant to enforce." *Reid*, 401 F.3d at 523. Compensatory education should be fact-specific, individualized, and reasonably calculated to ameliorate the educational deficit suffered by the child and should be designed with the goal of ensuring that the student is "appropriately educated within the meaning of the IDEA." *Id.* at 524 (citation and quotations omitted); *see id.* at 523 (noting that "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student") (citation omitted). Thus, an award of compensatory education must be specifically and individually tailored to the student to compensate the student for the educational lapse suffered in violation of the IDEIA.

Here, the Plaintiffs' request for an award contained "neither reasoning to support this [exact hourly request] nor factual findings showing that the [request] satisfied [W.G.'s] needs." *Reid*, 401 F.3d at 521. Ms. Ortega's testimony may have provided a basis for why *some*

compensatory education might be justified and/or necessary. Ms. Ortega testified that W.G. was not being instructed in the life skills that he needed as a child with MR and ED, in violation of his IEP. She explained the need for "tutoring one-on-one to provide reading, writing, and math" skills. *See* Tr. 5/15/09 at 68. She also explained that W.G. needed assistance to be able to engage in basic "daily activities, communication, and social skills." *Id*. at 69. Despite this testimony, and despite *Reid*'s admonishment against arbitrary or formulaic approaches to compensatory education awards, the Plaintiffs' request of 150 hours was arbitrary and unsupported. The request appears untethered to W.G.'s educational deficit or to the necessary and reasonable education reasonably calculated to elevate W.G. to the approximate position he would have enjoyed had he not suffered the denial of FAPE for four months. *See Reid*, 401 F.3d at 524 ("[T]he ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.").

The Court, therefore, agrees that Ms. Ortega's testimony is a woefully insufficient basis to support an award of 150 hours of compensatory education. Plaintiffs were not seeking "your typical run-of-the-mill academic tutoring. Because of his disability, we don't think academic tutoring would make – do anyone any good here." Tr. 5/15/09 at 12. What they wanted was tutoring in life-skills. *Id*. Recognizing that they were seeking an unusual award, Plaintiffs had the burden of demonstrating just what it was they wanted and to give some reasoning why their request would ameliorate the denial of FAPE. At a minimum, *Reid* demands that an award not be based on an arbitrary number, which Ms. Ortega's 150-hour request appears to be, given the lack of foundation for the request. In agreement with the Hearing Officer, the Court finds that the Plaintiffs failed to

demonstrate why their request was justified.[2]

To Plaintiffs' argument that SunRise was an inappropriate placement, D.C. counters that they completely miss the point: a 2008 Hearing Officer Determination, which they did not appeal, found no evidence that W.G.'s placement at SunRise Academy for the 2007-2008 school year was inappropriate and Plaintiffs cannot now argue that his placement there in the following 2008-2009 school year was inappropriate. *See, e.g.,* Def.'s Reply in Support of Mot. for Summ. J. [Dkt. # 20] at 6 n.3. Yet that is clearly what Plaintiffs argue, without noting that SunRise was initially appropriate. The Court agrees that Plaintiffs' argument that SunRise was an "inappropriate placement" is misplaced. More accurately, a July 2008 HOD found no evidence that placement at SunRise was inappropriate, but left the question open due to a need to evaluate W.G.'s truancy and to perform further tests. Those tests revealed that W.G. suffers from Mental Retardation and is Emotionally Disturbed, which is a more severe classification than Learning Disabled. At that point, whether SunRise could continue to provide the educational services required by this newly-identified disability classification, and as required by W.G.'s revised IEP, came into question. As the Hearing Officer concluded, SunRise failed to do so.

D.C. also argues that Plaintiffs must demonstrate an actual educational deficit before

---

[2] A remaining question is who bore the burden of producing evidence and ultimately fashioning a fact-specific award of compensatory education. The Plaintiffs argue the Hearing Officer shifted the burden to the Plaintiffs by finding that the education advocate did not present sufficient evidence for the Hearing Officer to make an award of compensatory education. *See* Pls.' Mem. in Support of Mot. for Summ. J. [Dkt. # 15] at 9. At a minimum, Plaintiffs argue the Hearing Officer should have provided them with an opportunity to add to the record on this question before summarily denying any and all compensatory education. *See id.* at 10. D.C. responds that the Plaintiffs bore the burden to demonstrate an educational deficit caused by W.G.'s denial of FAPE, and pursuant to *Reid*, to justify their request for 150 hours. *See* Def.'s Opp'n & Mem. in Support of Cross-Mot. for Summ. J. [Dkt. ## 16, 17] at 20–21. Given its disposition of this case, the Court will not resolve this dispute.

any award of compensatory education is warranted. *See* Def.'s Opp'n & Mem. in Support of Cross-Mot. for Summ. J. [Dkt. ## 16, 17] at 20; *see also A.T. v. District of Columbia*, 407 F. Supp. 2d 102, 115 (D.D.C. 2005) (observing that "it may be conceivable that no compensatory education is required for the denial of FAPE"). The Court agrees that there may be situations where a student who was denied a FAPE may not be entitled to an award of compensatory education, especially if the services requested, for whatever reason, would not compensate the student for the denial of a FAPE. However, that an education deficit occurred here is clear to the Court. The record does not illustrate a mere technical violation of W.G.'s rights under the IDEIA. The Hearing Officer noted that W.G. could not read and needed to be taught basic life-skills such as recognizing letters and crossing the street on signal, yet sat in Algebra and Chemistry classes for half the year for which "he more likely than not received no benefit." A.R. at 5. The Hearing Officer further credited witness testimony that W.G. was being instructed in grammar lessons, which the Hearing Officer again noted would unlikely provide any benefit to W.G., who has an IQ of 51. Ms. Ortega and W.G.'s mother also testified that they believed W.G. was being taught lessons too advanced for his comprehension level, and that he was faltering in, and in need of instruction on, basic life-skills. The HOD found an educational deficit and this Court agrees. The remaining question is the extent of the deficit and what type and amount of services, if any, could reasonably compensate W.G. for such deficit.

**The Remedy**

For purposes of a remedy under IDEIA, a Court sits in equity, not at law. A court may "hear additional evidence" and shall fashion "relief as the court determines is appropriate." *See* 20 U.S.C. § 1415(i)(2)(C). A court's powers to fact-find and craft an adequate remedy entails "broad discretion" and is rooted in "equitable considerations." *Florence County Sch. Dist. Four v. Carter*

*by & Through Carter,* 510 U.S. 7, 16 (1993) (further noting that "[c]ourts fashioning discretionary equitable relief under IDEA must consider all relevant factors"); *see also Reid*, 401 F.3d at 523 (noting that awarding compensatory education is an equitable remedy). Acting in equity, not at law, the Court finds and agrees with the Hearing Officer that W.G. was denied FAPE for his re-classified disabilities; that "Petitioner's requested life-skills training makes sense," A.R. at 5; and that, but for counsel's failure to complete the record and provide specifics on tutors and training that were apparently available, the Hearing Officer might have had enough information to make an award of compensatory education.

In this situation the Hearing Officer made all the findings he could on the record before him. The Plaintiffs therefore, on this record, have not met their burden of persuading the Court that the HOD was in error. *See Kerkam*, 862 F.2d at 887. Inasmuch as this Court can take additional evidence, *Reid*, 401 F.3d at 526, the Court will invite the Gills to request an evidentiary hearing concerning the appropriate compensatory education due to W.G. This will necessarily entail, *inter alia*, the availability of life-skills tutors and training and the amount of services reasonably necessary to compensate W.G. for the educational deficit he suffered due to a denial of a FAPE for four months between November 5, 2008 and March 11, 2009. D.C. is free to explore whether educational services provided to W.G. since March 2009 have diminished or overcome this educational deficit and whether W.G.'s truancy should be factored into any possible award of compensatory education. Should no request be forthcoming within 30 days, the HOD will be sustained in full and the case dismissed.

## IV. CONCLUSION

W.G. was denied a free appropriate public education in violation of the IDEIA. The Plaintiffs, however, failed to provide sufficient evidence for the Hearing Officer to award compensatory education for this denial. The education of a special needs child like W.G. cannot be forfeited by lawyering when the facts and needs of the child are clearly revealed in the record and findings of the Hearing Officer. Therefore, this Court, sitting in equity, invites the Gills to request an evidentiary hearing within thirty days or the Hearing Officer Determination will be sustained in full. Accordingly, the parties' cross-motions for summary judgment [Dkt. ## 15, 17] will be denied. A memorializing Order accompanies this Memorandum Opinion.


Date: November 9, 2010                                /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge